NATHANIEL T. HAMLIN & another *vs.* NEW YORK AND
NEW ENGLAND RAILROAD COMPANY.

Norfolk.    November 14, 1893. — February 3, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Easement — Private Way across Railroad — Deed — Exception.*

In 1848, a railroad corporation, whose railroad was built in 1849, filed a location
which separated into two parts a farm, the owners of which made no petition for
damages or for a private crossing, but, in 1851, conveyed to the corporation " all
the land taken by said company . .   from a certain piece of land," describing
it, and following which description were these words   " and we release all claim
or damage done by the location, construction, and use of said railroad, reserving
the right to cross the track of said railroad on grade near the westerly line of
our said lands at such place as said company can most conveniently provide, said
crossing to be made with cattle-guards on the sides and maintained at the expense
of said company."   A cart-path, running through the farm from a highway, and
across the strip of land taken by the railroad location, had been in existence and
use for some years before the date of the location.   When the railroad was built,
a crossing was constructed and planked by the corporation substantially over
the course of the former cart-path ; and such a way was and would continue to be
necessary for the convenient use of the farm.   The last survivor of the grantors
died in 1873, and the crossing was maintained by the corporation and used by
the owners of the farm until 1889, when it was closed by the corporation.   *Held*,
in an action for such closing, that the clause in the deed of 1851, relating to the
right to cross the railroad, was to be construed as an exception, and not as a
reservation.

TORT, for an alleged trespass in closing a private way across
the defendant's railroad in Walpole.   At the trial in the Supe-
rior Court, before *Hopkins*, J., the jury returned a verdict for
the plaintiff ; and the defendant alleged exceptions.   The facts
appear in the opinion.

*F. A. Farnham*, for the defendant.

*R. M. Saltonstall*, for the plaintiffs.

BARKER, J.   The defendant contends that the verdict against
it for having closed a private way which led across its railroad
is wrong, because the right of crossing was only for the lives of
grantors now dead.   The railroad was built in 1849 by the Nor-
folk County Railroad Company, chartered by St. 1847, c. 252.
That company, on April 19, 1848, filed a location which sepa-
rated into two parts the farm now owned by the plaintiffs.   Its

owners made no petition for damages or for a private crossing, but on February 15, 1851, conveyed to the company the strip of land covered by the location by a deed in which, after the description, are these words : "and we release all claim or damage done by the location, construction, and use of said railroad, reserving the right to cross the tracks of said railroad on grade near the westerly line of our said lands at such place as said company can most conveniently provide, said crossing to be made with cattle-guards on the sides and maintained at the expense of said company." The description was, "all the land taken by said company . . . from a certain piece of land," the bounds and location of which were given. The piece of land was a farm of some twenty-two acres, on which was a way or cart-path, starting from a highway on the south and running through the farm on its westerly line, across the strip taken by the railroad location. This path or way had been in existence and in use for some years before the date of the location. As the defendant introduced no evidence, and there was evidence as to the nature and configuration of the surface of the farm and of the use to which its several portions were adapted, tending to show that the way was and would continue to be necessary to the convenient use of the farm, that circumstance is to be considered as a fact in the present investigation. When the railroad was built, a crossing was constructed and planked by the company within a foot or so of the place where the cart-path had before been. The jury found specially that the crossing so built was substantially over the course of the way which had previously existed. The last survivor of the grantors who made the deed died in 1873, but the crossing was maintained by the railroad company, and used by the owners of the farm, until October, 1889, when it was closed by the defendant.

The plaintiffs rest their right on the deed of 1851, and no question is raised by them as to the effect of the filing of a railroad location upon the right to use an existing way. They construe the clause above quoted as an exception, which retained the way ungranted as appurtenant to the parts of the farm which the grantors retained, and contend that the right to use the crossing passed to the plaintiffs with the farm.

In our opinion, the clause may properly be construed as an

exception. Here, as in *White* v. *New York & New England Railroad*, 156 Mass. 181, the defendant is estopped to deny that the grantors had a title from which they could carve an exception. In construing the deed we are to place ourselves in the circumstances of the parties to it, in order to find their intention in the words used. It was fully stated in *Claflin* v. *Boston & Albany Railroad*, 157 Mass. 489, as the result of the authorities there cited, that, if an easement is " created by way of reservation, the word 'heirs' is necessary to create an easement in fee"; that " in this Commonwealth, however, an easement may be created by way of exception or reservation," and " if created by way of exception, the word ' heirs ' is not necessary to create an easement in fee, if the grantor owned the fee at the time of the conveyance "; and also that, " as an exception may be created by words of reservation, little reliance can be placed upon the language used in determining whether the right is by way of exception or by way of reservation." In *White* v. *New York & New England Railroad, ubi supra,* the rule was stated that " whether, in a given case, the language shall be construed to create an exception or a reservation, will depend upon the situation of the property and the surrounding circumstances, in the absence of a declaration in the deed by the parties of their intention as to the nature of a way."

In that case the clause construed an exception was " reserving the passway at grade over said railroad where now made." In neither that case nor the present did the deed contain a declaration of the parties as to whether the nature of the right was to be in fee or for life. In both instances the right of crossing was clearly intended to be annexed as an easement to the grantors' remaining lands for their benefit, the parties were dealing with existing ways which had been in use before the filing of the location, and the right of crossing was not only necessary for present use, but the circumtances were such as to make it evident that the necessity would be permanent. In each instance, also, the grantors' claim for damages was released by deed, no petition for damages or for a private crossing was made, and the parties evidently undertook to settle the whole matter by the deed. All these circumstances make it clear that the parties intended that the right of crossing should be perpetual, and unless there is some

feature of the contract between them which forbids us to construe their language as an exception, it should be so construed, and their intention carried out.

The test is, whether the language used retained in the owners of the farm a right of crossing not dependent upon any act to be performed by the railroad company, or created a new right which could be exercised only after something had been done by the grantee which the contract stipulated that it should do, and which it was not otherwise bound to do, and the performance of which was essential to the exercise of the easement. If by a fair construction of the language used the right of crossing could not be exercised until the grantee had done something which it agreed to do, or if in the future such acts on its part would be essential to the exercise of the right, then the right could not be one of which the grantors were possessed as of their former estate. But the fact that the grantee was bound by the deed to perform acts which would make the exercise of the right more safe and convenient, but were not conditions precedent and not essential to its exercise, would not bar a construction that the right itself remained in the grantors as of their former estate. If the parties meant to say, " The grantors except from the grant and retain as of their former estate the perpetual right of crossing the railroad by the present cart-path or way, and the grantee on its part agrees to plank and maintain the crossing and make and keep cattle-guards, and shall have the privilege of removing the crossing to a more convenient spot not destroying the identity of the path as a way," then the right of crossing was, without interruption and as of their former estate, in the grantors, and never sprang from any implied contract or grant of the railroad company, although new incidents not essential to it were annexed to it by the implied contract. Such a construction of the clause does violence neither to the language used nor to the intention of the parties, when the words are read and the intention is sought in the light of the circumstances under which the deed was made.

The crossing having been already constructed by the railroad company at a place substantially identical with that where the old way or cart-path crossed its location, it cannot reasonably be contended that the providing of a place, the planking of the

crossing, or the making of cattle-guards became by the delivery of the deed conditions precedent to the further use of the crossing by the grantors. The possible change of the place of crossing was merely a privilege given the railroad company to dea with a portion of the grantor's estate which they had not granted, and neither planking nor cattle-guards were essential to the right retained. Although the railroad company agreed to maintain the crossing and cattle-guards at its own expense, the right of the grantors to cross was independent of those agreements.

The defendant relies on the cases of *Ashcroft* v. *Eastern Railroad*, 126 Mass. 196, and *Claflin* v. *Boston & Albany Railroad*, 157 Mass. 489. But the clause in the deed under which Ashcroft claimed could not operate as an exception, because by its terms the grantor's rights could be exercised only in and through a culvert to be built and maintained by the railroad company under its railroad, and which it was under no obligation to build or maintain, except that imposed by the deed. This obligation was held an essential part of a grant, and to indicate that the intention of the parties was to give the grantor a new right; but in the present case the exercise of the right of passage over the railroad at grade was always possible, even if the grantee should fail to perform all its implied obligations. The way which was in dispute in *Claflin* v. *Boston & Albany Railroad* was not in existence when the deed was made, the land had not then been taken by the railroad company, although it was staked out by the company's engineer and partly graded for a railroad, and the words used were " reserving to ourselves." The present case is not governed by either of those last mentioned, and we find nothing in it to compel us to defeat the intention of the parties to the deed by construing it as a reservation.

*Exceptions overruled.*