William M. McLean, Respondent, *v.* F. W. Woolworth Company, Appellant.

Third Department, January 10, 1923.

Deeds — restrictive covenants — action to restrain defendant from erecting building more than one story in height — deed to defendant's predecessor provided that building should not be more than one story in height but contained no covenant by grantee — plaintiff's predecessor acquired adjoining property from common grantor by deed which did not refer to restrictions — attending circumstances do not indicate that agreement constituted covenant running with land.

The plaintiff cannot restrain the defendant from erecting a building on its premises more than one story in height on the ground that the deed from the common grantor to defendant's predecessor in title imposed a restriction on the land for the benefit of the grantor's adjoining land, which is now owned by the plaintiff, where it appears that the deed in question provided that " the building erected or to be erected on lot hereby conveyed to be only one story high; " that the grantee in that deed did not covenant and agree not to erect a building more than one story high and the deed did not in any other way purport to subject the lot to any easement or permanent right going with the adjoining land owned by the grantor, and that in the chain of title to plaintiff's land there is no mention whatever of the restriction here in question nor is there any suggestion that plaintiff's land carries with it any easement or right against defendant's land.

Furthermore, the circumstances attending the original deed do not indicate that it was the intention of the parties thereto that the restriction in question should constitute a covenant running with the land but the intention is clear that it was to be merely a personal agreement between the grantor and the grantee in that deed.

Hasbrouck, J., dissents, with opinion.

Appeal by the defendant, F. W. Woolworth Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 20th day of June, 1922, upon the report of a referee appointed to hear and determine, perpetually restraining the defendant from erecting any building more than one story in height upon certain premises in the city of Binghamton.

*Hinman, Howard & Kattell* [*H. D. Hinman* and *Davies, Auerbach & Cornell* of counsel], for the appellant.

*Jenkins, Deyo & Hitchcock* [*Ralph L. Emmons* and *Israel T. Deyo* with them on the brief], for the respondent.

Van Kirk, J.:

The parties to this action own their respective pieces of real estate from a common grantor, Cyrus Strong, 2d. These premises are in a block in the business section of the city of Binghamton. The defendant is the owner of what is known as 83 and 85 Court street, being a lot forty-two and one-twelfth feet front and eighty feet deep. On this lot is constructed a building, which is four stories for about sixty-four feet and one story the other sixteen feet. At the rear of this lot is a lot of the same width and about eighteen feet deep which, on January 17, 1881, Cyrus Strong, 2d, conveyed to Anna E. Ayres and Anna Ayres Johnson, and which we shall call the Ayres-Johnson lot. The deed is in the usual form for a conveyance of real estate; at the end of the description is this: " Said Strong is to own one-half of the rear wall now erected and to have sewer connections without expense to him. The building erected or to be erected on lot hereby conveyed to be only one story high. The premises hereby conveyed are the same upon which Hallock, Cary & Co. erected an addition to their said stores and containing more or less." Then follows the usual short form warranty of title.

This piece of land, called 83 and 85 Court street and the Ayres-Johnson lot above mentioned, became and is now the defendant's property. At the time the Ayres-Johnson lot was conveyed Cyrus Strong, 2d, was the owner of the lands lying immediately easterly and northerly of that lot. The land immediately northerly, lot 19 on the map, is now plaintiff's property.

The plaintiff brought this action claiming that the provision in the deed above quoted is a restriction in favor of the remaining lands of Cyrus Strong, 2d, part of which he owns, against the erection of any building on the Ayres-Johnson lot more than one story high; and he asks that the defendant be restrained from erecting any building more than one story high upon this lot, and from extending the structure now thereon to a greater height than one story.

The whole controversy depends then upon the meaning and effect of the sentence, " The building erected or to be erected on lot hereby conveyed to be only one story high." In *Clark* v. *Devoe* (124 N. Y. 120, 124) Judge Vann said: "A covenant is simply a contract of a special nature, and the primary rule for the interpretation thereof is to gather the intention of the parties from their words, by reading not simply a single clause of the agreement, but the entire context and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met." Consideration of attending circumstances can never justify a construction of a contract of

which the language is not susceptible. Attending circumstances do not justify the making, by the court, of a new contract or the modification of the contract made; they are considered for the purpose solely of determining what the parties understood and intended by the language used.

This sentence quoted from the deed is a restriction inserted by the grantor in the deed, which restriction the grantees, although they did not sign the deed, accepted and consented to by accepting the deed. It is not in the usual form of a covenant and declares no obligation which the grantor assumes or anything which he agrees or contracts to do. It in no wise purports to subject the lot to any easement or permanent right going with any other lands. The fact that the grantor owned adjoining lands is not mentioned in connection with the restriction. The restrictive words used are not appropriate to cover all buildings which may at any time thereafter be erected upon these premises. The words " building erected or to be erected " mean the building then on the premises or then contemplated. The expression is not general. The grantees make no declaration for themselves. In no respect are their heirs, representatives and assigns bound by the contract implied; they are bound by the contract by the fact solely that, accepting the deed, they assent to the restriction. It will not be assumed or implied that the grantees have agreed to anything further than the language expresses to which they have given their assent. To give the words used the meaning contended for by the plaintiff would require something to be inserted that the grantees never assented to. No words are used indicating a perpetual restriction or that any one else than the parties to the deed were bound by the contract implied. In order that the restriction should have the meaning contended for by the plaintiff, in some words it should have been expressed that the grantees, for themselves, their heirs and assigns, covenant and agree that no building shall thereafter be erected upon this lot more than one story high. We find no words in this deed capable of being construed as the equivalent of such language. In *Clark* v. *Devoe (supra)* the covenant was: "And the said Moses Devoe [the grantor] being also the owner of the adjoining lot known and distinguished as No. 22 Tenth street, for himself, his heirs, executors, administrators and assigns, does hereby covenant to and with the said party of the second part, his heirs, executors, administrators and assigns, that he will not erect, or cause to be erected, on said lot number twenty-two Tenth street, any building which shall be regarded as a nuisance, or which shall be occupied for any purpose which may render it a nuisance; " and the court said that there was no agreement that the premises

should not be used for certain purposes, or that they should be free from nuisances forever; there was no corresponding covenant by the grantee restricting the use that he might make of the premises conveyed to him, so that the restrictions might be mutual and uniformity of use thus secured; and that " according to the literal, and hence natural, interpretation of this language, the parties meant that the grantor should not personally do or cause to be done any of the inhibited acts." We think the language of the restriction in the case at bar is not equivocal, or its meaning doubtful; it sets forth simply an agreement between the parties to the deed themselves and beneficial to the grantor only, not a covenant running with the land or in favor of any adjoining lands.

If we assume, however, that there is ambiguity in the meaning of the language used, we think the circumstances and facts known to the parties more strongly indicate the interpretation we have adopted than that contended for by the plaintiff. In the first sentence above quoted from this deed, the right to sewer connections is personal to the grantor; he is to have " sewer connections without expense to him." At the time of that deed the west wall of his residence, or an extension of his residence, was the east wall or side of the Ayres-Johnson lot. He was occupying his residence. It is natural to suppose that the sewer connection spoken of was a connection for his residence. The description of this lot shows a notch cut in the northeast corner, three feet deep. Opposite this was his library window. If there be uncertainty in the language used, this circumstance would be sufficient to explain why this clause was inserted. Also at the time that deed was given, lot 19, the plaintiff's lot, was entirely occupied by a one-story building, used by C. A. Weed & Co.; it is an inside lot. In the chain of title to lot 19 there is no mention whatever of the restriction here in question, nor is there any suggestion in its line of title that lot 19 carries with it any easement or right against the Ayres-Johnson lot. The purchasers of lot 19 at no time purchased with any stipulation or agreement in writing that they acquired any easement as against the Ayres-Johnson lot; nor did they pay any additional compensation because such an easement attached to lot 19. It is now claimed that the plaintiff desires to erect a building of several stories upon lot 19 and, upon doing so, if the defendant is permitted to raise its building more than one story, the light and air for plaintiff's proposed building will be excluded. But the language used in the Ayres-Johnson deed gives no suggestion that the parties contemplated protection against such a situation in behalf of lot 19; and there is no evidence that the possibility of erecting such a building on lot 19 was then thought of.

An examination of all the surrounding circumstances convinces us that it is at least as probable that the parties to the Ayres-Johnson deed intended that the contract there expressed should be personal to the parties, as that it should be a covenant running with the land. If, when considered in connection with surrounding circumstances, "the language used is reasonably capable of two constructions, the one that limits rather than the one that extends the restriction should be adopted, for the reason that the law will always favor the free and unrestricted use of property, and, therefore, all doubts and ambiguities must be resolved in favor of the natural right to the free use and enjoyment of property and against restrictions." (*Schoonmaker* v. *Heckscher*, 171 App. Div. 151; affd., 218 N. Y. 722.) It is a general rule that covenants restricting the use of land for the lawful purposes that go with title are not to be extended by implication (*Kitching* v. *Brown*, 180 N. Y. 414, 427); such "restrictions are to be construed strictly against the grantor and are not to be extended beyond the fair import of the language expressed except by necessary implication." (*Duryea* v. *Mayor*, 62 N. Y. 592, 597.)

We find no authority cited by the plaintiff which, when applied to this case, sustains his contention. He cites *Korn* v. *Campbell* (192 N. Y. 490, 495) to define the class of covenant to which he maintains the restriction in the instant case belongs. The class "embraces those cases in which the grantor exacts the covenant from his grantee, presumptively or actually, for the benefit and protection of contiguous or neighboring lands which the former retains;" and the court cited *Equitable Life Assurance Society* v. *Brennan* (148 N. Y. 661) as a case within this class; in which case the covenant was made by the grantee and in terms bound his heirs and assigns at all future times not to build in violation of the restriction, and stated that these covenants "shall run with the land and bind all successive owners." The court in its discussion gives prominence to the distinction between a covenant which runs with the land and one relied upon for the benefit of the grantor only and in which there is no mutual agreement between adjoining owners and no circumstances from which mutual rights may be fairly gathered; and concludes that, though the covenants were in the defendant's chain of title and he had notice thereof, it in fact ran to the grantor only and was not a covenant running with the land. In *Rowland* v. *Miller* (139 N. Y. 93) the covenant contained the expression: "It being expressly agreed that this covenant runs with the land and is binding on all future owners thereof." And in *Trustees* v. *Lynch* (70 N. Y. 440) there were mutual covenants which "should not only be binding upon the

parties, their heirs and successors, but that the same should be binding upon all persons who might thereby become interested in the lands * * * as owners." In *Atlantic Dock Co.* v. *Leavitt* (54 N. Y. 35) the deed was sealed by both parties, and the covenant was: " The said party of the second part for himself, his heirs and assigns, doth hereby covenant with the said Atlantic Dock Company and their successors that neither the said party of the second part, nor his heirs or assigns, shall or will at any time hereafter erect upon any part of said lots any building " in violation of the restrictions specified in the covenant. It was held that a deed sealed by both parties is a deed of the grantee as well as the grantor, and a court of equity would restrain the grantee, or one claiming under him, from doing that which he has agreed not to do by a deed accepted by him.

Without unduly extending this opinion it will not be possible to review all the cases cited by the respondent; but we have found no case construing such language as is used in this restriction to be a covenant running with the land and depriving the successive owners for all time from that use and enjoyment which go with title and possession.

We are of opinion, *first*, that the language of the deed containing the restriction is clear and plain, and that there is no plain or distinct indication that the parties intended to make the Ayres-Johnson lot subservient to any easement going with the plaintiff's property; *second*, that a consideration of all the surrounding circumstances upholds this construction.

The judgment should be reversed upon the law and the facts, with costs to the appellant, and final judgment directed for the defendant dismissing the complaint upon the merits, with costs.

The findings of fact numbered 41, 42 and 48 are disapproved and this court finds it was the intention of the parties to the deed of January 17, 1881, Strong to Ayres and Johnson, that the building restriction therein should be simply an agreement between the parties to the deed, beneficial to the grantor only, and not a servitude or easement in the property granted for the benefit of the plaintiff's property.

H. T. Kellogg, Acting P. J., Kiley and Hinman, JJ., concur; Hasbrouck, J., dissents, with an opinion.

Hasbrouck, J. (dissenting):

The action is in equity to restrain defendant from adding stories to the building now on the premises granted originally to one of the defendant's predecessors in title. The deed contained a restriction and created a negative easement in these words:

" The building erected or to be erected on lot hereby conveyed to be only one story high."

The effect of such a restriction is to create an easement in favor of the premises retained by the grantor. (*Brown* v. *O'Brien,* 168 Mass. 487, and cases cited; *Hobson* v. *Cartwright,* 93 Ky. 368; *Meigs* v. *Lewis,* 164 Penn. St. 597; *Smith* v. *Bradley,* 154 Mass. 230; *Clark* v. *N. Y. Life Ins. & Trust Co.,* 64 N. Y. 33; *Keening* v. *Ayling,* 126 Mass. 404; *Lignot* v. *Jaekle,* 72 N. J. Eq. 233.)

The defendant challenges the effect of the language and urges that its predecessors in title made no covenant binding their heirs to keep the agreement expressed in the deed, and in support of its contention cites the case of *Krekeler* v. *Aulbach* (51 App. Div. 591). That case has never been cited that I can find and was affirmed in the Court of Appeals (169 N. Y. 372) without passing upon the question of the effect of the restriction contained in the Krekeler deed.

Let us examine whether the restriction is in the nature of an exception or a reservation. If in the nature of a reservation the provision in the deed has one effect; if in the nature of an exception, quite another.

" A reservation is a clause in a 'deed, whereby the grantor doth reserve some new thing to himself out of that which he granted before " (Shep. Touch. 80) — it is " something taken back out of that which is clearly granted. * * * A reservation is never of any part of the estate itself, but of something issuing out of it, as * * * rent or some right to be exercised in relation to the estate; as to cut timber upon it. An exception, on the other hand, must be a portion of the thing granted, or described as granted, and can be of nothing else; and must also be of something which can be enjoyed separately from the thing granted." (*Craig* v. *Wells,* 11 N. Y. 321; *Cunningham* v. *Knight,* 1 Barb. 399; *Starr* v. *Child,* 5 Den. 599; *Claflin* v. *B. & A. R. R. Co.,* 157 Mass. 489.)

If then the right to enjoy light and air of the parcel granted be an exception it falls within the rule of law where an easement is created by way of exception. The word " heirs " is not necessary to create an easement in fee if the grantor owned the fee at the time of conveyance. (*Claflin* v. *B. & A. R. R. Co., supra; Wood* v. *Boyd,* 145 Mass. 176; *White* v. *N. Y. & N. E. R. R. Co.,* 156 id. 181; *Craig* v. *Wells,* 11 N. Y. 315.)

In this last case the court says: " Unless, therefore, the clause in question is obligatory upon the grantee as a covenant, * * * it must have force and effect, if at all, as an exception or reservation."

There was by the deed under consideration excepted to the grantor the use of the light which was part of the fee. He excepted

that to himself, his heirs and assigns.   If he did, plaintiff should have a recovery here.

I vote for an affirmance of the judgment.

Judgment reversed on the law and facts, with costs to the appellant, and final judgment directed for the defendant dismissing the complaint upon the merits, with costs.   The court disapproves findings of fact numbered 41, 42 and 48, and finds that it was the intention of the parties to the deed of January 17, 1881, Strong to Ayres and Johnson, that the building restriction therein should be simply an agreement between the parties to the deed, beneficial to the grantor only, and not a servitude or easement in the property granted for the benefit of the plaintiff's property.