THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RADAMÉS CINTRÓN, Defendant and Appellant.

No. 8522. Argued March 21, 1941.—Decided March 28, 1941.

*Celestino Iriarte, F. Fernández Cuyar* and *H. González Blanes,* for appellant; *George A. Malcolm, Attorney General,* and *R. A. Gómez, Prosecuting Attorney,* for The People, appellee.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

Radamés Cintrón was indicted and found guilty of an offense of a violation of Section 328 of the Penal Code. The information in this case reads as follows:

"The above mentioned defendant Radamés Cintrón, on a date previous to the filing of this information, that is, on the 30th of April, 1939, and within the territorial limits of Ciales, Puerto Rico, which is a part of the Judicial District of Arecibo, Puerto Rico, there and then, while he was driving as chauffeur the Pontiac automobile No. 1240 along the road which leads from Ciales to Manatí, Puerto Rico, which is a public highway, and when he reached kilometer 11 hectometer 2, where there is a very sharp curve, and

while he was going in the direction of Manatí, Puerto Rico, illegally and wilfully, without exercising the proper care, precaution and circumspection, and being in a state of intoxication and driving said automobile at an excessive speed along said highway because of his gross negligence and carelessness he swerved the car toward the right side of the road, going into the yard of the house of Mr. Rafael Martínez Rodríguez and crashing against an alligator pear tree which was there, as a result of which collision Iraída Muñoz McCormick (a human being) who was travelling in said automobile suffered several serious wounds, from whose effect she died in the Mimiya Clinic, in Santurce, Puerto Rico, on the 1st of May 1939.''

The defendant appeals from the judgment rendered by the District Court of Arecibo condemning him to one and a half year in the penitentiary. He alleges that seven errors were committed by the lower court, which errors we shall now proceed to consider separately. The first error reads thus:

''The lower court committed an error both substantial and harmful to the defendant, when it refused to admit expert testimony concerning the breakage of the mechanism which controlled the movements of the steering-gear of the Pontiac automobile, as well as when it refused to order the citation of Enrique Sandoval, the person who transported the automobile from the place of the accident to the place where said vehicle was examined by an expert mechanic.''

For a better understanding of what happened it is convenient to transcribe the incident which gave rise to the refusal of the court to admit the expert testimony offered by the defendant. After having qualified as an expert mechanic, without the district attorney's objection, the interrogatory of the witness Juan Cruz Almentero continued in the following manner:

''Q. Do you know Radamés Cintrón?—Yes, Sir.
''Q. Where?—In Arecibo.
''Q. Do you remember when you met him?—About five months ago, more or less.
''Q. Where did you meet him?—In Arecibo.

"Q. On account of what?—Because he went to my garage requesting my services as an expert mechanic but I could not accompany him the day he went.

"Q. Where to?—To Ponce.

"Q. Did you go to Ponce?—Yes, sir, with Radamés.

"Q. Where?—I went to the Pontiac Service Station.

"Q. What happened there?—When we got there he told me what he was taking me there for and then he showed me the car and told me to examine it.

"Q. What make of car was it?—A Pontiac.

"Q. What model?—1938.

"Q. Did you examine it?—Yes, sir.

"Q. What was the result of that examination?

"District Attorney.—I object. It has not been shown on what date he examined it *and it has been said that he went to Ponce and we do not know who took it to Ponce and whether it was in the same condition as on the day of the accident.*

"Q. Who identified the car for you?—The young man Radamés, and the mechanic of the Service Station.

"Q. Was the car in good condition, or not?

"The District Attorney—I object, because he is going to testify as an expert witness concerning the *condition of the car*, and in my opinion he cannot do that unless he examined the car on the day of the accident or the next day and unless *it be proven that the car when the mechanic examined it was in the same condition as when the accident occurred.*

Judge—*The Court would only admit such evidence if it referred to the very day of the accident.*

"Attorney Mr. Reyes Delgado—Our purpose was to establish the internal condition of the motor of the car.

"Judge—I am not going to admit this evidence and furthermore the Jury shall retire in order not to hear it.

"The District Attorney—Let the witness retire also. (The Jury leaves the Court room under the custody of the marshal.)

"Attorney Mr. Reyes Delgado—Our purpose is to show that the car was examined after the accident and its motor and entire mechanism were looked over. (He argues.)

"Judge—*After the accident?*

"Attorney Mr. Reyes Delgado—*Yes, after the accident.*

"Judge—*Even less admissible. An automobile is badly damaged after an accident.*

"Attorney Mr. Reyes Delgado—Our evidence tends to prove that the car collided with the tree on its right or left side, I am not sure which, and that said side was destroyed as a result of the collision, and that the other side of the car was in perfect condition, with the exception that a small mechanism which is in the block, where there were no signs that the collision might have affected it, there was a small mechanism which controls the movements of the steering-gear of the car and it was broken. (He argues.)

"District Attorney—My objection is not directed against my colleague's evidence as to the state of the car after the accident. *My objection is directed against the manner in which said evidence is brought to Court.* In other words, the witness has testified that he is a mechanic and that he examined the car in Ponce. He has not told us on what date he examined it and it may have been some days after the accident or even a month later, *and he has not told us who took the car from Ciales to Ponce and under whose control it was and whether it remained in the same condition as it was the day of the accident. There is the possibility that this car, on the road from Ciales to Ponce, may have been taken to another garage and that there the above mentioned mechanism was broken and the mechanic found it broken when he examined the car, this being evidence which the defendant may prepare at his will. However, if it is shown that the car was in the same condition, that no one touched it and that somebody took it to Ponce and that it was kept in a place where the defendant could not touch it, then. . . .*

"Both parties argued.

"Judge—The objection of the district attorney is sustained.

"Attorney Mr. Reyes Delgado—We request that the Court issue a citation to Enrique Sandoval, the person who took the car from the place of the accident to the warehouse of the Pontiac Agency in Ponce.

"Judge—The Court cannot postpone the trial to wait for that witness. That witness should have been brought by the defendant if he wished to prove his case in an admissible manner and the Court denies the citation requested." (Italics supplied.)

After the attorney for the defense had noted an exception, the Court said as follows:

"Honorable Judge—The Court wants to make it clear that it will admit any evidence as to an examination of the automobile at

the place where the happenings took place, by a mechanic, at the time or sometime after; but said evidence, after the car has been taken to Ponce, can not be admissible, especially when a collision has taken place, and it could never he determined if any defect noted in the car in Ponce had been occasioned by the trip or because of the violent crash against a tree on the road. It would be evidence that would confuse the jury."

The error charged involves two points, the first in not allowing the expert mechanic to testify as to the result of the examination made by him in Ponce of the defendant's car and, second, in having refused to call the witness Sandoval, and to continue the hearing until he arrived.

In arguing the first point, the appellant cites cases to uphold that the expert's testimony was admissible and that the objection of the District Attorney and the decision of the court could affect, at the most, the weight that the jury could give to said evidence.

We agree with appellant that the reasons given by the trial judge for refusing to admit this evidence were in part erroneous, but the ruling in itself was not so. There is no doubt that expert testimony, in appropriate cases and once the necessary basis has been established, is admissible to show the conditions in which an automobile or another vehicle remained after an accident. 11 R.C.L. 630, Section 50; 5 Am. Jur. 862, Section 653, and see note in 77 A.L.R. 559.

It is, however, indispensable to show first that the automobile, at the time it is examined by an expert, is in the same condition in which it was after the accident, and that it has not been subjected to tampering which may have changed said condition. It is up to the judicial discretion to determine in this case, whether it should admit the evidence or not, and the time elapsed between the accident and the examination is not the most important elément to be considered, but whether the vehicle is in the same condition as it was after the accident.

In the note in 129 A.L.R. 438, the rule to be followed is set forth as follows:

"In general, evidence as to the condition of an automobile sub-sequent to an accident may be admitted as a means of ascertaining the responsibility for the accident, where the evidence is not too remote from the time of the acident, *and where it is shown that the condition of the automobile has not changed since the accident.* If the evidence offered is somewhat remote from the time of the accident, it may not have as great a weight as that relating to conditions existing at the time of the accident, but the admissibility of such evidence will not be affected. *On the other hand, if there is no showing that the condition of the automobile after the accident has not changed since the accident, evidence as to the condition of the automobile after the accident is not admissible."* (Italics supplied.)

Among the cases which have applied this rule are *Cleasby* v. *Taylor* (1934) 176 Wash. 251, 28 P. (2d) 795; *Rotche* v. *Buick Motor Co.* (1934) 358 Ill. 507, 193 N. E. 529; *Kelly* v. *Huber Baking Co.* (1924) 145 Md. 321, 125 Atl. 782; *Ison* v. *Stewart,* 94 P. (2d) 701; *Rix* v. *Rix* (1932) 85 N. H. 529, 161 Atl. 38; *Neal* v. *Smith,* (1914) 147 N. W. 183.

In the *Cleasby* case, *supra,* it was held that evidence with respect to the condition of the defendant's automobile (dents on the fenders and condition of the front lights) forty days after the accident was erroneously admitted, when the witness did not state that the condition of the automobile was the same as that which existed immediately after the accident.

The *Rix* case, *supra,* was an extreme one, since the evidence admitted had to do with the condition of an automobile two years after an accident, but on appeal it was held that no error was committed since its admission lay within the discretion of the Court. But in this case it was previously proven that the vehicle had remained in a garage ever since the day of the accident without having been tampered with or repaired.

In the *Rotche* case, *supra,* it was held that the court committed error in admitting evidence tending to prove the condition of certain bolts of the brake of an automobile several weeks after the accident without it having been previously proven that the conditions of said bolts had not changed since the accident occurred.

We are of the opinion that this rule, which gave rise to the objection formulated by the district attorney against the testimony of the expert, is the one which should prevail, since if it were otherwise it would be very easy to alter the condition of a vehicle after an accident and then try to prove that the cause of the accident was a mechanical defect of the vehicle. For that reason we said before that although the reasons given by the trial judge for refusing to admit in evidence the testimony of the expert Almentero were erroneous, since he give the impression that this kind of evidence is never admissible, his ruling must be upheld on appeal, because the defendant did not lay down the basis necessary to make said evidence admissible. This leads us to consider the second motive of error alleged, that is, the refusal of the judge to order the citation of the witness Sandoval who, it is said, took the automobile of the defendant from the place of the accident to Ponce, or to continue the trial of the case until said witness arrived.

When the trial of this case began in the lower court, the parties stated that they were ready for trial and this implied that they had their witnesses in court. This Court, in the case of *People* v. *Sarria,* 57 P.R.R._____ held that no abuse of discretion is committed by a judge who refuses to order the citation of a witness for the defendant when the motion to that effect is presented after all the evidence for the people and for the defense has filed before the court in a long trial and when the witness had to be summoned in Río Piedras to appear in Ponce. In the case at bar the evidence for the People had already filed before the court and

that for the defendant had, as a matter of fact, also finished, when the expert Almentero was not permitted to testify, since the defendant did not comply with the requirements which would have enabled the witness to testify, said requirements consisting precisely in the offering in evidence of other testimony which would show the condition of the automobile after the accident occurred, and the fact that it had not been tampered with from that moment until the time when the expert mechanic examined it. Defendant should have had that evidence in court and he did not try the least to show the reasons for the failure of the witness Sandoval to appear with the other witnesses of the defendant and to place himself under the rules of the court. Neither was it shown whether the witness Sandoval was in the city of Arecibo when the trial was being held or whether he resided in Ponce, the city to which he took the automobile. In the absence of such a showing, the trial judge did not abuse his discretionary powers in refusing to continue the trial until said witness could be found, summoned and appeared in court. Furthermore, the sole testimony of said witness would not have been enough to bridge the gap which existed in the defendant's evidence with respect to the requirements which had to be complied with before the testimony of the expert Almentero could be admitted in evidence. It was said that Sandoval would testify that he took the automobile from kilometer 11 in the Ciales–Manatí road to Ponce. The evidence for The People showed that the automobile remained in the place of the accident during three days and besides we do not know how many days it remained in the garage in Ponce before it was examined by the expert Almentero. Upon the defendant fell the burden of proving his case, and in order to do that, he should have brought forward evidence tending to prove that the automobile was not tampered with during the three days that it remained on the road, and likewise during the time that it was on the garage. The witness San-

doval's testimony with respect to the fact that he took the automobile from the place where the accident took place to Ponce, would not have rendered admissible the testimony of the expert Almentero.

██ The first assigned error must be dismissed. The second reads thus:

"II.—The trial judge committed grave error when he instructed the jury as follows: 'The defendant says that something happened in the automobile as a result of which the steering-gear was out of order; that he tried to control the car, but could not and then he struck a tree. Now it is up to you to determine whether you have believed that or whether you have believed that the defendant was driving at a great speed; that he had imbibed liquor, that is, *that he was in such a nervous state* that although he could drive, *he did not have the control of one who is sober,* and that when he took the curve, *and due to the speed at which he was driving,* you must determine *whether that great speed and that state of mind in which he found himself* brought about such a carelessness and inability to control the car that it smashed into the yard of the house and brought about the death and damages which the evidence has shown.'" (Italics supplied.)

The appellant alleges that the trial judge assumed that the facts which appear in italics in the above copied instruction were true, since he expressed them in present indicative and in an affirmative manner, so that the jury was precluded from exercising its function of determining whether those facts were proven and whether they constitute gross negligence. If one reads the instruction summarily, one might interprete it in that manner, but the least analysis will show that the judge laid before the jury an alternative to be decided by it while weighing the evidence of both parties. He first sets forth the defendant's theory: that something happened in the steering-gear of the automobile, that he tried to control the car, but could not and then he struck a tree. He immediately told the jury that *they had to determine* whether they believed that *or* whether they believed that the defendant was driving at a great speed, *that* he had imbibed

liquor, that is, that he was in such a nervous state that although he could drive he had not the same control that a sober person would have, and that then *they could determine* whether the speed at which he was driving and his state of mind brought about his inability to control the car. The trial judge did not accept as proven either the theory of the defendant or that of the district attorney, but instead submitted both of them to the jury in order that the latter should determine which of the two should prevail, and this being so, the error charged has no merit whatsoever.

The third and fourth assignments of error, which also refer to the instructions transmitted to the jury, can be decided jointly. They read thus:

"III. The District court committed a serious error when it transmitted to the jury instructions defining the offense with which the defendant was charged, completely ignoring the essential difference between civil negligence and the gross and criminal negligence required by Section 328 of the Penal Code.

"IV. The lower court committed an error both substantial and harmful to the rights of the defendant when it instructed the jury that the defendant had committed the crime with which he was charged if it was shown that he was careless or negligent, disregarding the question of proximate cause."

The instructions affected by these assignments of error are the following:

"The gentlemen of the jury must be aware of the fact that the law says gross negligence or carelessness. That is, the district attorney does not have to prove that the defendant wilfuly committed the act which caused the death. What the district attorney has to prove is a case from which it appears that the collision was caused by the gross negligence or carelessness of the defendant. That is, this is not a crime which must be wilful, as for example voluntary manslaughter, but instead a crime in which the law punishes the carelessness, the negligence of the individual.

"Gross negligence or carelessness is that careless conduct or *extreme* lack of skill, which places other persons in danger of death or injury. Gross negligence or carelessness is shown by the circum-

stances which surround the accident. That is, it must be deduced, but deduced logically from those circumstances which surround the accident in order to be then able to decide with reasonable logic whether there was in reality such *extreme* gross negligence or carelessness in the case. How can these circumstances be determined? By the evidence which has filed before the court. That is, the gentlemen of the jury, in order to determine whether there was such gross negligence or carelessness, must not look for conjectures not connected with the evidence which has been offered here; but instead the conclusion to which they shall finally come, as to whether there was such negligence, must come out of the evidence offered here by both parties." (Italics supplied.)

"If the gentlemen of the jury, after examining all the evidence, reach the conclusion beyond all reasonable doubt, that Radamés Cintrón, on the 30th of April of this year and while he drove an automobile, he did it *in such a careless manner and with such extreme gross negligence and carelessness that as a result of said negligence he swerved and while so swerving crashed against a tree, and as a result of the collision Miss Iraida Muñoz McCormick received wounds from which she died,* gentlemen of the jury, your duty is to bring a verdict of guilty.

"If the gentlemen of the jury, after examining all the evidence should reach the conclusion that Radamés Cintrón *was not guilty of any gross negligence or carelessness* and that the collision which caused the death of Iraida Muñoz *was the result of another thing other than such negligence,* that is, *something beyond his control,* or if the gentlemen of the jury have reasonable doubt as to whether defendant is guilty, in any of these cases they must bring a verdict of not guilty." (Italics supplied.)

The appellant cites the cases of *The People* v. *Rodríguez,* 47 P.R.R. 565, and *The People* v. *Agosto,* 50 P.P.R. 444, in each of which this Court reversed the judgment of the trial court because the instructions given were, in substance, to the effect that any carelessness or omission, be it equivalent or not to a gross negligence, was sufficient to uphold a verdict of guilty, and he alleges furthermore that the instructions in the case at bar are similar or identical to those given in said cases.

The judgment rendered in the *Rodríguez* case, *supra,* was not reversed because the instructions given were erroneous but because this Court considered that the evidence presented at the trial was not sufficient to uphold a verdict of guilty, and for that reason our decision in said case is not applicable here.

With respect to the case of *People* v. *Agosto,* it is true that the judgment of the lower court was reversed because of the insufficiency of the instructions given by the trial judge, who limited himself to stating that any omission of a duty or carelessness, equivalent or not to a gross negligence, was sufficient, and furthermore, because said trial judge failed to give instructions concerning the question of proximate cause.

In the case at bar the judge did not merely follow the words of the statute when he defined what constitutes a violation of Section 328 of the Penal Code, but he called the attention of the jury several times to the fact that the gross negligence or carelessness must be "that careless conduct or extreme lack of skill, which places other persons in danger of death or injury". The instruction could have been broader, more specific, but it cannot be maintained that it is erroneous to such an extent that the jury was led to commit an error harmful to the defendant.

■ Neither is the appellant correct when he says that the lower court did not instruct the jury with respect to the proximate cause of the accident. The next to last paragraph of the above cited instructions appropriately covered this question. The words "proximate cause" were not used by the judge, but when he told the jury that if after examining the evidence it decided that the defendant drove the automobile in such a careless manner and with extreme gross negligence that it was as a result of these facts that the car swerved and collided with the tree and Miss Muñoz thereby received the wounds from which she later died, he was telling them that

they had to decide whether those facts were or not the proximate cause of Miss Muñoz's death.

The situation which arose in the case of *The People* v. *Agosto, supra,* is very different. That case had to do with a collision between the locomotive of a train and an automobile, in a railway crossing, the conduct observed by a gatekeeper also being involved, and this Court held that if the jury had been given the proper instructions it might have determined "that the proximate cause of the collision was the fact that the driver of the vehicle negligently failed to observe and obey the danger signal."

In the case which we are deciding the evidence does not present a similar set of facts. It was not proven that the intervention of any other person could have been the proximate cause of the accident and the case therefore did not call for a specific instruction similar to that which was held to be indispensable in the case of *Agosto,* because of the special circumstances involved in that case.

█ The fifth assignment of error reads thus:

"The trial judge erred in instructing the jury with respect to the fact that there is a presumption that the driver of an automobile is careless and lacks the skill required by Section 328 of the Penal Code when it is shown that said driver was travelling at a great speed, that he had imbibed liquor and that he swerved from the road and entered a private property at the side of the road, since in so instructing the jury the trial judge created a legal presumption which does not exist and supplemented the evidence for the prosecution with an additional element of evidence."

This error refers to that part of the instructions which reads thus:

"Gentlemen of the jury: I must also instruct you *that in the absence of convincing evidence, it is presumed that the driver of an automobile* who is travelling at a great speed, who has imbibed liquor and who swerves from the road and penetrates into a private property at the side of the highway, *is careless and lacks the skill required by Section 328 of the Penal Code, since every conductor of an auto-*

*mobile, when he is taking a curve has the duty of reducing speed and keeping within the highway, unless something beyond his control should force him to take another direction."* (Italics supplied.)

This has been the instruction which has made us meditate the most as to whether the jury may have been induced to commit error, but the appellant himself admits in his brief that "it is correct to assert, perhaps, that the facts which the instructions mention constitute, should they be believed and in the absence of evidence to the contrary and if they are to be considered the proximate cause of the accident, a violation of Section 328."

Let us see what was the evidence that was submitted to the consideration of the jury.

The evidence for the District Attorney tended to show that the defendant, after drinking liquor in Ciales, was driving an automobile at an excessive speed along the highway which leads to Manatí; that the speed at which he was driving was so great that two persons who were walking along the road had to throw themselves into a ditch in order to avoid being run over; that when he reached a curve on kilometer 11, he left the road, entered the yard of a house running over three persons who were there and then collided with an alligator-pear tree; that the collision with the tree was so great that Miss Muñoz, who sat beside the defendant, was thrown from the car and trapped between the door of the car and the tree, suffering as a result the fracture of the pelvis, the perforation of the peritoneum and wounds in the head, which were the cause of her death on the following day; that defendant's breath smelt of alcohol and his behaviour after the accident was that of an intoxicated person; that he also received a slight wound on his forehead; that a bottle of whiskey, half empty and some paper glasses were found within the automobile; that said bottle was bought by the defendant in Ciales and opened in the house

of a friend, and two highballs were drunk out of it a few moments before leaving for Manatí. It was proven that that there was no obstacle or vehicle in the road when the accident took place.

Defendant, while testifying, admitted that he had bought the bottle of whiskey in Ciales and that he drank two highballs and likewise that he carried the bottle in the automobile, but he denied that he had drunk on the road or that he was intoxicated; he also denied that he was driving at an excessive speed, and he said that the accident happened because the steering-gear did not function properly when he entered the curve and as a result the automobile left the road and collided with the tree although he put on the brakes. His other evidence tended to show that he was not intoxicated after the accident and that he was not driving at an excessive speed.

Section 5, paragraph XXX (l) of Act No. 75, to regulate the use of motor vehicles in Puerto Rico, approved on the 13th of April of 1916, provides that: "no person shall operate a motor vehicle while intoxicated" and the violations of said statute are made misdemeanors by Section 19.

In 1912, a long time before said legal provision came into effect, this Court, in the case of *The People* v. *De Jesús,* 18 P.R.R. 923, had decided the following:

"There is no provision in the road laws or in the regulations governing automobiles which has any reference to the use of alcoholic drinks by the conductors of vehicles. But the effects of such drinks on the senses, on the mental faculties, and even on the moral faculties of the persons are well known, and when a person whose duty it is to drive a machine on public highways, which duty requires the use of his senses and, to a certain extent, of his mental and moral faculties, indulges in such drinks to excess, thus voluntarily clouding his senses and disturbing his faculties, *it may be concluded that he neglected to perform the duties of his position faithfully.*" (Italics supplied.)

In the case of *People* v. *Townsend,* 214 Mich., 267, 183 N. W. 177, it was held that:

"It is gross and culpable negligence for a drunken man to guide and operate an automobile upon a public highway, and one doing so and occasioning injuries to another, causing death, is guilty of man- slaughter. It was unlawful for defendant to operate his automobile upon the public highway while he was intoxicated; made unlawful by statute, and wrong in and of itself, and it was criminal careless- ness to do so and he is guilty of manslaughter, provided the death was a proximate result of his unlawful act."

See 45 C. J. 898, Section 603.

An instruction somewhat similar to that of the case at bar was impeached as erroneous in the case of *State* v. *Klein* (1926), 209 N. W. 881, the jury being told through said in- struction that "to drive an automobile when intoxicated is a statutory offense, and that a violation of that law raises a presumption of negligence". It was held that the instruc- tion was correct, the Supreme Court of Minnesota expressing itself as follows:

"Of course, as stated in *State* v. *Goldstone,* 144 Minn. 405, 175 N. W. 892, violation of a statutuory provision regarding the opera- tion of motor vehicles, . . . does not prove the existence of culpable negligence. . . But a violation of a statute intended for the protec- tion of another, which proximately causes or results in injury to such other, must be held criminal negligence."

The applicable statute, similar to paragraph (*i*) of Sec- tion 5, *supra,* is then cited and the court adds:

"It was intended to make it unlawful for a drunken person to drive a car. Plainly this was to safeguard life, limb, and property. *And the court was clearly right in stating to the jury that the pre- sumption is that, where a person drives an automobile in violation of law, he is negligent.* But the court was careful to leave to the jury whether his intoxication so exhibited itself in his driving against Stodola that the jury could say that such driving was culpably negligent." (Italics supplied.)

In the case at bar the lower court told the jury in its in- structions that in the absence of convincing evidence and "if

it was proven that the driver of the automobile was driving at a great speed, that he had imbibed liquor, that he swerved from the road and penetrated in a private property in the side of the highway, if all that were proven" the presumption that the driver was careless and lacked skill would then arise. All the premises were left to be decided by the jury in accordance with the evidence presented.

Under all the circumstances of the case the jury was justified in believing the evidence for the People, and in believing that the proximate cause of the accident was the excessive speed at which the defendant was driving his automobile, together with the fact that he was not in a normal state as a consequence of the liquor which he had drunk, all these facts constituting indisputably negligent acts of the defendant. We are of the opinion that the assigned error must be dismissed.

▮ In the sixth assignment of error the appellant charges the trial judge with having shown bias, prejudice and partiality against the defendant during the trial. In his brief, he calls our attention to an incident which appears on pages 67 and 68 of the transcript of the evidence, appellant alleging that the judge said, while deciding an objection raised by the district attorney: "I admit evidence that this witness saw the defendant drinking liquor, etc.," and further on repeated the same thus: "The court has said that evidence may be presented, if there is any, concerning the time when the defendant was seen drinking, etc."

We have examined the above-mentioned pages and we gather from them that what the judge actually said was: "I admit evidence as to whether this witness *did or did not see* the defendant drinking, etc.", and "as to the time when the defendant *was or was not seen* drinking."

It is true that the words "or not" are written in ink between the lines in the above-mentioned pages, but this transcript of the evidence is the original one, duly certified by

the stenographer and approved by the trial judge and it is presumed to be authentic in the absence of evidence to the contrary. (Subdivisions 15 and 17 of Section 102, Law of Evidence, Section 464, Code of Civil Procedure, 1933.)

Another incident to which the appellant calls our attention and which appears in pages 113 and 114 of the transcript, occurred while the attorney for the defense was taking his exceptions to the instructions, and as the jury was not present, it could not have influenced its verdict in the slightest. The sentence imposed upon the defendant, considering the manner in which the accident took place and its consequences, is the best proof, as the prosecuting attorney of this Court says, that the judge was not moved by bias, prejudice or partiality.

The seventh and last error refers to the fact that a motion for a new trial was denied, the grounds for said motion being the same errors with which the lower court was charged and which have been discussed and decided against the appellant in the course of this opinion.

The judgment appealed from must be affirmed.